1

2

3

4          UNITED STATES DISTRICT COURT

5          EASTERN DISTRICT OF WASHINGTON

6

7   LUCINDA JAY JOHNSTON,                No. 2:14-CV-00108-JTR

8            Plaintiff,                  ORDER GRANTING
9                                        DEFENDANT'S MOTION FOR
                 v.                      SUMMARY JUDGMENT
10

11  CAROLYN W. COLVIN,
12  Commissioner of Social Security,

13           Defendant.

14

15       **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

16  Nos. 13, 15.  Attorney Lora Lee Stover represents Lucinda Jay Johnston (Plaintiff);

17  Special Assistant United States Attorney Franco L. Becia represents the

18  Commissioner of Social Security (Defendant).  The parties have consented to

19  proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

20  record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion

21  for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

22                          **JURISDICTION**

23       Plaintiff filed applications for Disability Insurance Benefits (DIB) and

24  Supplemental Security Income (SSI) on July 11, 2011, alleging disability

25  beginning March 22, 2010.  Tr. 173-86.  The applications were denied initially and

26  upon reconsideration.  Tr. 129-36, 138-41.  Administrative Law Judge (ALJ) Marie

27  Palachuk held a hearing on December 7, 2012, at which Plaintiff, represented by

28  counsel, testified as did vocational expert (VE) Kimberly Mullinax.  Tr. 39-88.

The ALJ issued an unfavorable decision on January 18, 2013.  Tr. 16-33.  The Appeals Council denied review.  Tr. 1-4.  The ALJ's January 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 4, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 37 years old at the time of the hearing.  Tr. 89.  Plaintiff graduated from high school and has taken some college classes but has no degree.  Tr. 47.  Plaintiff previously worked as an in-home caregiver, a driver for an auction, pizza baker, telemarketer, fast food worker, cashier, and at a steel working company.  Tr. 48-55, 79, 182-85.

At the administrative hearing, Plaintiff testified that she had trouble working with other people who were depressed or anxious.  Tr. 49.  Plaintiff complained of pain in her wrists, shoulders, and hips caused by rheumatoid arthritis and bursitis.  Tr. 49, 61.  Plaintiff described periodically having "flashback[s]" at work.  Tr. 55-56.  Plaintiff testified that she sometimes does not want to leave her house, mostly because she doesn't like strangers.  Tr. 60-61.  Plaintiff testified that her psychological problems stem primarily from being attacked by a man whom she lived with.  Tr. 73.  Plaintiff met with a mental health counselor for about six to eight months.  Tr. 56.

For a period of time after Plaintiff stopped working as an in-home caregiver, she spent most of her time in her room.  Tr. 70-71.  Since she began taking medication, however, she has been able to do household chores such as cleaning the kitchen, doing laundry, and vacuuming.  Tr. 71.  Plaintiff testified that she can stand for fifteen to twenty minutes and can sit for about forty five minutes at a

time.  Tr. 74.  Plaintiff has no problem lifting things, Tr. 75, and can walk for about

eight blocks, possibly as long as a mile, Tr. 77-78.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo,

deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d

1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error.  *Tackett v.

Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put

another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S.

389, 401 (1971).  If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the ALJ.

*Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence

will still be set aside if the proper legal standards were not applied in weighing the

evidence and making the decision.  *Brawner v. Secretary of Health and Human

Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the

administrative findings, or if conflicting evidence supports a finding of either

disability or non-disability, the ALJ's determination is conclusive.  *Sprague v.

Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one

through four, the burden of proof rests upon claimants to establish a prima facie

case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On January 18, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Preliminary, for purposes of Plaintiff's DIB application, the ALJ found that Plaintiff met the insured requirements through December 31, 2013. Tr. 21.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 22, 2010, the alleged onset date. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: depression, anxiety, and obesity. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 20. The ALJ found Plaintiff had the residual function capacity (RFC) to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [F]requent bilateral manipulation; able to understand, remember and
> carry out simple routine repetitive tasks/instructions involving three-
> step commands; attention and concentration may wax and wane but
> able to maintain it for two hour intervals between regularly scheduled

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

breaks; only occasional and superficial (defined as non-cooperative) interaction with the public and only occasional interaction with co-workers.

Tr. 23-24.

At step four, the ALJ found Plaintiff could perform past relevant work as a driver or hand packager. Tr. 30. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 22, 2010, through the date of the ALJ's decision. Tr. 29.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) not finding Plaintiff's physical impairments severe at step two, (2) disregarding the opinions of Plaintiff's providers and consultative examiner, (3) assessing Plaintiff's RFC, (4) posing an improper hypothetical question to the VE, (5) not crediting Plaintiff's testimony about the severity of her symptoms, and (6) failing to consider the record as a whole, which supports finding Plaintiff disabled.

## DISCUSSION

**A.    Step two**

Plaintiff argues that the ALJ erred by not finding her physical impairments severe at step two. ECF No. 13 at 10-12.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no

more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

### 1. Low back pain

The ALJ did not err by finding Plaintiff's low back pain non-severe.  In October 2006, Plaintiff sought treatment from William Shanks, M.D., for back pain arising from a "strain injury."[1]  Tr. 298.  Dr. Shanks ordered an MRI of Plaintiff's lumbar spine, and although he noted some evidence of degenerative disc disease, the only treatment he recommended was physical therapy.  Tr. 298.  Dr. Shanks opined that Plaintiff was still capable of light work.  Tr. 298.  In July 2011, when Plaintiff completed her function report, she reported no physical limitations.  Tr. 202.  Given that Dr. Shanks found that Plaintiff's back injury would not prevent her from working, and that, towards the beginning of the relevant period, Plaintiff reported no limitations associated with her back, substantial evidence supports the ALJ's finding that Plaintiff's back injury had "no more than a minimal effect on [her] ability to work."  *Smolen*, 80 F.3d at 1279.

### 2. Rheumatoid arthritis (hand pain)

The ALJ did not err in finding that Plaintiff's rheumatoid arthritis is non-severe.  The ALJ found Plaintiff's mild rheumatoid arthritis non-severe because Plaintiff did not report pain in her hands until June 2012, six months prior to the hearing.  Tr. 22, 356; *see also* 42 U.S.C. § 1382c(a)(3)(A) (disability must be premised on medically determinable physical or mental impairments that have "lasted or can be expected to last for a continuous period of not less than twelve months").  The ALJ further reasoned that medication reduced Plaintiff's hand pain

---

[1]Dr. Shanks' evaluation predates the relevant period in this case by several years and therefore has limited relevance.  S*ee also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

1  and, in a treatment note dated July 9, 2012, she reported feeling "much better." Tr.

2  22.

3          It appears that the ALJ misread the July 9, 2012, report in finding that

4  Plaintiff's hand pain had improved.  More accurately, the report from the July 9,

5  2012, office visit reads that Plaintiff stated her *depressive symptoms* were "much

6  better" and she was "very happy" with the medication for her mental impairments,

7  i.e., Zoloft.  Tr. 373.  Regarding her hand pain, Plaintiff reported that "[p]rednisone

8  helped with the swelling *but not pain*."  Tr. 373 (emphasis added).  Despite the

9  ALJ's misreading of this report, any error is harmless.  *See Tommasetti v. Astrue*,

10 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the

11 record that the . . . error was inconsequential to the ultimate nondisability

12 determination.").  In a record dated February 20, 2013, which Plaintiff submitted to

13 the Appeals Council, Plaintiff's clinician reported that Plaintiff's hand pain had

14 "significantly improved."  Tr. 409.  Plaintiff had been taking Humira for about six

15 months and reported "significant improvement [of her hand pain] with Humira

16 therapy."  Tr. 409.  While this information was not before the ALJ, this Court must

17 consider evidence that was submitted to the Appeals Council.  *Brewes v. Comm'r

18 of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  Given that medication

19 did eventually significantly improve Plaintiff's hand pain, the ALJ's reasoning is

20 sound (despite being based on a misreading of the July 19, 2012, report).

21         The fact that Plaintiff did not report any pain in her hands until six months

22 prior to the hearing, and the fact that medication significantly alleviated her pain,

23 constitutes substantial evidence that her rheumatoid arthritis has "no more than a

24 minimal effect on [her] ability to work."  *Smolen*, 80 F.3d at 1279.

25 **B.    Credibility**

26         Plaintiff argues the ALJ erred by finding her less than credible in her

27 symptom reporting.  ECF No. 13 at 13-14.

28         It is generally the province of the ALJ to make credibility determinations.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

*Andrews*, 53 F.3d at 1039.  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 25-29.  The ALJ reasoned that Plaintiff was less than credible because her symptom reporting was contrary to (1) the objective medical evidence, (2) the fact that medication was relatively effective in controlling her symptoms, (3) her lack of motivation to follow through with treatment, and (4) her activities of daily living (ADL).  Tr. 25-29.  The ALJ also reasoned that Plaintiff was inconsistent in reporting her symptoms and her drug treatment history.  Tr. 28.

### 1.    Contrary to the medical evidence

The ALJ noted that, contrary to Plaintiff's reports of her physical impairments, "the objective medical evidence does not support the level of limitation claimed" by Plaintiff.  Tr. 25.  Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  As discussed *infra*, the ALJ did not err in evaluating the medical evidence.  From the Court's review of the record, substantial evidence supports the ALJ's conclusion that the medical evidence does not support the level of impairment alleged by Plaintiff.  Therefore, this was a specific, clear, and convincing reason to discount Plaintiff's credibility.

### 2.    Symptoms controlled by medication

The ALJ's second reason for finding Plaintiff less than credible, i.e., that many of her symptoms can be controlled with medication, Tr. 25-26, is a specific,

clear, and convincing reason to discount Plaintiff's credibility.

Generally, the fact that a condition can be remedied by treatment or medication is a legitimate reason for discrediting a claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ noted that Plaintiff was prescribed Wellbutrin in January 2009, which somewhat helped Plaintiff's depressive symptoms. Tr. 25. In March 2009, Plaintiff began taking Vistaril, which appeared to help her anxiety. Tr. 26, 275. The ALJ noted that in January 2011, Plaintiff stopped taking medication and her life became tumultuous. Tr. 26, 283. The ALJ cited to additional medical records, and Plaintiff's own testimony, where Plaintiff reported that medication helped keep her mood level and allowed her to do more activities. Tr. 28 (citing 283, 287-88, 328-48); *see also* Tr. 58 (Plaintiff testifying that Zoloft does not "control[] the cycles but . . . keep[s] her from going up and down"); Tr. 61 (Plaintiff testifying that Zoloft keeps her on "an even keel"); Tr. 70 (Plaintiff testifying that prior to taking medication she mostly stayed in her room, but with the medication she "started helping [with household chores] and wanting to do stuff"); Tr. 204 (Plaintiff reported taking Abilify, Cyclobenzaprine, and Hydrazine without any side effects); Tr. 409 (Plaintiff reporting "significant improvement [of her hand pain] with Humira therapy").[2]

Substantial evidence supports the ALJ's finding that medication alleviates a

_____

[2]Plaintiff notes that she did not have medical insurance at various times during the period relevant to this case. ECF No. 13 at 4. Although being unable to afford treatment or medication may excuse a claimant's noncompliance with prescribed treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), in this case, Plaintiff testified that she received DSHS benefits, which included medical coverage, since August 2009. Tr. 52, 63-64. Plaintiff's own testimony establishes that she had the resources to obtain treatment and medication through much, if not all, of the relevant period.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

significant amount of Plaintiff's symptoms; thus, this is a specific, clear, and convincing reason to discount Plaintiff's credibility.  *Warre*, 439 F.3d at 1006.

### 3.    Lack of motivation to follow through with treatment

The ALJ's third reason for finding Plaintiff less than credible, i.e., that she appeared less than motivated to seek regular medical treatment and to follow through with prescribed treatment, Tr. 28, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

The ALJ may rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).  Failure to follow a course of treatment may be excused, however, if the claimant's noncompliance is attributable to his or her mental illness.  *Id.* At 1114.

The ALJ noted that in August 2011, Plaintiff's psychiatric nurse practitioner, Samantha Lowderback, ARNP, reported that Plaintiff was not following up with her self-management goals.  Tr. 28 (citing Tr. 331).  Ms. Lowderback instructed Plaintiff to make and follow her goals if she wanted to continue counseling.  Tr. 331.  Plaintiff apparently saw Ms. Lowderback once more in December 2011, Tr. 337-38, and then did not seek regular medical treatment until June 2012 when she started going to Community Health Association of Spokane.  Tr. 356.  The ALJ reasoned, "If [Plaintiff's] health problems were not severe enough to motivate her to follow through with treatment, it is difficult to accept her assertion that they are disabling."  Tr. 28.  The ALJ also noted that the scarcity of medical records prior to June 2012 belied Plaintiff's alleged onset date of March 22, 2010.  Tr. 28.

The ALJ did not err in citing Plaintiff's failure to follow through with her mental health treatment and her gaps in treatment as reasons to undermine her credibility.  *Molina*, 674 F.3d at 1113.  Plaintiff does not argue that her noncompliance was attributable to her mental illnesses and, having reviewed the record, the Court cannot conclude that her mental impairments were severe enough

to make it so she was unable to comply with her clinician's instructions. Substantial evidence supports the ALJ's findings that Plaintiff did not, at times, pursue regular treatment and that Plaintiff was not always motivated to follow through with treatment requirements. Thus, this is a specific, clear, and convincing reason to discount Plaintiff's credibility.

### 4. ADL

The ALJ's fourth reason for finding Plaintiff less than credible, i.e., Plaintiff's ADL were inconsistent with her alleged impairments, Tr. 28-29, is a specific, clear, and convincing reason supported by substantial evidence.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted that Plaintiff reported being able to care for pets, attend to personal care, prepare simple meals, clean the house, do laundry, mow the lawn, shop, drive a car, use public transportation, go out by herself, and visit family members. Tr. 28-29.

Although it is not entirely clear whether Plaintiff "is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting," *Orn*, 495 F.3d at 639, the ALJ did not err in pointing out that Plaintiff can perform a wide range of ADL. Substantial evidence supports finding Plaintiff's level of activity inconsistent with her allegations of disabling impairments. This is a specific, clear, and convincing reason for discounting Plaintiff's credibility.

### 5. Inconsistent reporting

The ALJ's fifth reason for finding Plaintiff less than credible, i.e., Plaintiff's

inconsistent statements, Tr. 28, is a specific, clear, and convincing reason.  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.  The ALJ pointed to numerous inconsistencies in Plaintiff's statements concerning the severity and duration of her impairments and her substance use and her past drug treatment.  Tr. 28.  The ALJ properly cited these inconsistencies in discounting Plaintiff's credibility.

### 6.    Conclusion

The ALJ gave several specific, clear, and convincing reasons to find Plaintiff less than credible, and each reason was supported by substantial evidence.  The ALJ did not err in finding Plaintiff not entirely credible.

## C.    Evaluation of medical evidence

Plaintiff seems to argue that the opinions of John Arnold, Ph.D., Frank Rosekrans, Ph.D., and Samantha Lowderback, ARNP establish Plaintiff's disability, and the ALJ erred by not giving these opinions greater weight.

### 1.    Acceptable medical sources

Only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish an impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a).  "In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. Rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at

631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In this case, reviewing doctors Richard Hamersma, Ph.D., and John Gilbert, Ph.D., found Plaintiff's symptoms were not disabling.  Tr. 90-98, 100-108, 110-16, 120-28.  Therefore, the ALJ was only required to give specific and legitimate reasons for rejecting an opinion finding that Plaintiff's impairments preclude her from working.

### a.  Dr. Arnold

Plaintiff presented to Dr. Arnold for a psychological evaluation on September 10, 2010.  Tr. 240-52.  Dr. Arnold diagnosed Plaintiff with major depressive disorder, single episode, mild and personality disorder NOS with borderline features.  Tr. 245.  Dr. Arnold found that Plaintiff's impairments would mostly result in mild and moderate functional limitations, but found that Plaintiff's depression and disordered personality feature would markedly affect her social interactions.  Tr. 246.  Dr. Arnold's medical source statement concluded that Plaintiff was

> [C]apable of understanding and carrying out simple instructions.  She can only concentrate for short periods of time.  She can work without close supervision and not disrupt others.  She can make simple decisions in a work setting.  She would work best in positions that have minimal interaction with others.  She can use her vehicle or the bus for transportation.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

Tr. 246.  Dr. Arnold opined that Plaintiff's impairments would last between six and nine months and recommended Plaintiff engage in mental health counseling.  Tr. 247.

Plaintiff presented to Dr. Arnold for a second psychological evaluation on May 27, 2011.  Tr. 253-60.  Dr. Arnold diagnosed Plaintiff with Bipolar II disorder.  Tr. 254.  Dr. Arnold again assessed Plaintiff mostly with mild and moderate functional limitations, but found Plaintiff markedly limited in her ability to appropriately communicate with others and in her ability to maintain appropriate behavior in a work setting.  Tr. 255.  Dr. Arnold's medical source statement was mostly the same as his September 2010 medical source statement; however, he omitted "[P]laintiff can make simple decisions in a work setting," and added "[s]he can ask questions and request assistance" and "[s]he can recognize hazards and take appropriate precautions."  Tr. 256.  Dr. Arnold found that Plaintiff's impairments would likely last between nine and twelve months and again recommended Plaintiff take part in mental health counseling.  Tr. 256.

The ALJ gave some weight to Dr. Arnold's evaluations because they were consistent with the finding that Plaintiff was capable of working with some limitations.  Tr. 29.

The ALJ gave adequate weight to Dr. Arnold's opinions.  Dr. Arnold found Plaintiff most limited in areas of social functioning.  Tr. 246, 255.  But the ALJ accounted for these assessed social limitations in her RFC determination by finding that Plaintiff was capable of "only occasional and superficial (defined as non-cooperative) interaction with the public and only occasional interaction with co-workers."  Tr. 24.  Substantial evidence supports the ALJ's reading of Dr. Arnold's report that Plaintiff is capable of working with some limitations.  The ALJ did not err in evaluating Dr. Arnold's opinions.

### b.  Dr. Rosekrans

Plaintiff presented to Dr. Rosekrans for a psychological evaluation on April

2, 2012. Tr. 319-27. Dr. Rosekrans diagnosed Plaintiff with major depressive disorder, single episode, unspecified; generalized anxiety disorder; and, panic disorder without agoraphobia. Tr. 319; *but see* Tr. 326 (diagnosing Plaintiff with posttraumatic stress disorder; major depressive disorder; and dysthymic disorder). Dr. Rosekrans opined that Plaintiff is "too anxious to work regularly." Tr. 320. In his mental status exam (MSE) of Plaintiff, Dr. Rosekrans observed that Plaintiff was "appropriate and cooperative and pleasant," "oriented in all respects," and "showed good insight into her condition." Tr. 321-22.

The ALJ gave little weight to Dr. Rosekrans' opinions because (1) Dr. Rosekrans did not assess any functional limitations, (2) Dr. Rosekrans' objective findings did not support his conclusion that Plaintiff could not work, and (3) his opinion is inconsistent with other evidence in the record. Tr. 29.

The ALJ provided specific and legitimate reasons for giving little weight to Dr. Rosekrans' opinions. As noted by the ALJ, Dr. Rosekrans provides no details about how Plaintiff's anxiety impacts her ability to work. The "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Similarly, although Dr. Rosenkrans subjected Plaintiff to numerous psychological tests (including MSE, Personality Assessment Inventory, Trails A and B tests), he failed to discuss how the test results indicated that Plaintiff was unable to work. Tr. 321-22. An ALJ may reject a medical opinion that is "inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Furthermore, Dr. Arnold's psychological evaluations, Drs. Hamersma and Gilbert opinions, and Plaintiff's treatment notes do not establish that Plaintiff's anxiety precludes her from working. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1196. The ALJ gave specific and legitimate reasons for giving little weight to Dr. Rosekrans' opinions.

1        **2.      Other sources**

2        An ALJ is required to consider evidence from "other sources," including

3    physicians' assistants and nurse practitioners, 20 C.F.R. § 416.913(d); S.S.R. 06-

4    03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812

5    F.2d at 1232.  An ALJ must give "germane" reasons to discount evidence from

6    "other sources."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Even though

7    medical source evidence is the only way to establish an impairment, an ALJ cannot

8    ignore information from non-acceptable medical sources regarding a claimant's

9    physical and mental capabilities.  *Sprague*, 812 F.2d at 1232.

10        Samantha Lowderback, ARNP, was Plaintiff's psychiatric nurse practitioner

11    at Spokane Falls Family Clinic from January 2009 to December 2011.  Tr. 273,

12    337-38.  At various times, Ms. Lowderback diagnosed Plaintiff for anxiety,

13    personality traits, major depressive disorder, posttraumatic stress disorder, mood

14    disorder, and bipolar disorder.  *See*, *e.g.*, Tr. 274, 277, 279, 291, 331.  Ms.

15    Lowderback prescribed Plaintiff multiple types of medication to control her mental

16    impairments, including Wellbutrin, Abilify, and hydroxyzine.  *See*, *e.g.*, Tr. 279.

17        After thoroughly summarizing Ms. Lowderback's treatment notes, Tr. 25-

18    27, the ALJ stated that she gave "some weight" to Ms. Lowderback's opinions, Tr.

19    29.  The ALJ emphasized Ms. Lowderback's conclusion that "[Plaintiff's] progress

20    is fair and her participation is satisfactory [other than] Plaintiff is not following up

21    with self-management goals."  Tr. 29 (citing Tr. 331).

22        The ALJ did not err in evaluating Ms. Lowderback's opinions.  Plaintiff

23    argues that Ms. Lowderback's records "reflect that Plaintiff did not present well

24    and that Plaintiff lacked insight into her own limitations and often used poor

25    judgment in terms of caring for herself."  ECF No. 13 at 13.  Plaintiff's

26    interpretation of Ms. Lowderback's treatment notes is not unreasonable.  But the

27    Court must uphold the ALJ's decision when the evidence is susceptible to more

28    than one rational interpretation.  *Tommasetti*, 533 F.3d at 1040.  From the ALJ's

summary of Ms. Lowderback's records, it is clear that the ALJ fully considered the record and concluded that the records did not establish Plaintiff's disability. Furthermore, it appears that Ms. Lowderback did not assess any functional limitations or offer any opinions regarding Plaintiff's ability to work.  The value of records created by "other sources" is largely in providing information "as to how an impairment affects a claimant's ability to work."  *Sprague*, 812 F.2d at 1232. As Ms. Lowderback never assessed Plaintiff with any functional limitations, her treatment notes provide relatively little information regarding whether Plaintiff's impairments are disabling.

**D.      RFC and hypothetical question**

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.").  In formulating a RFC, the ALJ weighs medical and other source opinion and also considers the claimant's credibility and ability to perform daily activities.  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In this case, the ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [F]requent bilateral manipulation; able to understand, remember and carry out simple routine repetitive tasks/instructions involving three-step commands; attention and concentration may wax and wane but able to maintain it for two hour intervals between regularly scheduled breaks; only occasional and superficial (defined as non-cooperative) interaction with the public and only occasional interaction with co-workers.

Tr. 23-24.  When the ALJ asked the VE if a person with Plaintiff's background and

1    limitations set forth in the RFC determination *supra* could sustain full time

2    employment, the VE opined that such a person could work as a driver or hand

3    packager.  Tr. 84-85.

4        Plaintiff argues that the ALJ should have included additional limitations

5    regarding how her mental impairments affect her ability to learn tasks, maintain

6    attendance at work, and relate to work supervision.  ECF No. 13 at 12-13.  Plaintiff

7    fails to point to any specific evidence supporting these limitations.  From

8    reviewing the record, the Court concludes that the ALJ's RFC determination

9    essentially takes into account the limitations assessed by Drs. Arnold, Hamersma,

10   and Gilbert.  The Court concludes that the ALJ's RFC determination is supported

11   by substantial evidence and not based on legal error.

12       Plaintiff also argues that the ALJ's hypothetical question to the VE was

13   inadequate because it failed to account for Plaintiff's physical impairments or

14   "accurately portray" her mental impairments.  ECF No. 13 at 14.  "Hypothetical

15   questions posed to the [VE] must set out all the limitations and restrictions of the

16   particular claimant."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

17   Nonetheless, an ALJ is only required to present the VE with those limitations the

18   ALJ finds to be credible and supported by the evidence.  *Osenbrock v. Apfel*, 240

19   F.3d 1157, 1165-66 (9th Cir. 2001).

20       Contrary to Plaintiff's argument, the ALJ did in fact include the limitation of

21   "frequent bilateral manipulation" to account for Plaintiff's rheumatoid arthritis.

22   Tr. 24.  No evidence supports finding that Plaintiff's rheumatoid arthritis resulted

23   in greater limitations than found by the ALJ or that Plaintiff's lower back pain

24   causes any kind of functional limitation.  Furthermore, as discussed *supra*, the ALJ

25   did not err in evaluating the evidence underlying Plaintiff's mental impairments

26   and the ALJ properly accounted for the assessed mental limitations in her

27   hypothetical to the VE.

28       The ALJ's RFC determination and hypothetical questions to the VE are

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

supported by substantial evidence and not based on legal error.[3]

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 1, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

_____

[3]The Court notes that the ALJ's decision does not contain a specific finding that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).  Social Security Ruling (SSR) 00-4p requires the ALJ to ask the VE whether there is any conflict between the VE's testimony and information provided in the DOT.  In this case, the ALJ did ask the VE if there was a conflict between the VE's testimony and the DOT and the VE responded that there was no conflict.  Tr. 85.  Given that the ALJ made this inquiry, the Court concludes that the ALJ did not err.

ORDER GRANTING DEFENDANT'S MOTION . . . - 19